UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Antoine Clemons, | Case No. 21-cv-1886 (KMM/TNL) |
| Petitioner, | |
| v. | REPORT & RECOMMENDATION |
| Federal Prison Camp Warden B. Birkholz, and the Director of the Federal Bureau of Prisons, | |
| Respondents. | |

Antoine Clemons, Reg. No. 14944-030, FPC-Duluth, P.O. Box 1000, Duluth, MN 55814 (pro se Petitioner);[1] and

Ana H. Voss and Kristen Elise Rau, Assistant United States Attorneys, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for Respondents).

---

[1] It appears that, sometime after the Petition was filed, Petitioner was transferred and is now being supervised by the Federal Bureau of Prisons' ("BOP") RRM Kansas City field office in Kansas City, Kansas. *Find an inmate.*, Fed. Bureau of Prisons, http://www.bop.gov/inmateloc/; *RRM Kansas City*, Fed. Bureau of Prisons, https://www.bop.gov/locations/ccm/ckc/. It is Petitioner's "responsibility to keep this Court properly apprised of his current address so that he may receive correspondence from this Court." *Jackson v. Brown*, No. 18-cv-2567 (WMW/LIB), 2020 WL 1236708, at *3 (D. Minn. Jan. 3, 2020), *report and recommendation adopted*, 2020 WL 1236562 (D. Minn. Mar. 13, 2020); *see also Hogquist v. Anoka Cty. Dist. Courts*, No. 19-cv-2471 (WMW/KMM), 2019 WL 6874709, at *1 n.1 (D. Minn. 17, 2019) ("It is a petitioner's responsibility to provide updated contact information to ensure timely receipt of case-related communications."). The Court will, however, direct that the Clerk of Court send a copy of this Report & Recommendation to Petitioner in care of the RRM Kansas City field office in an effort to reach him:

Antoine Clemons, Reg. No. 14944-030
c/o RRM Kansas City,
Residential Reentry Office
400 State Ave., Suite 800
Kansas City, KS  66101

    Further, "It has long been established that once a court acquires jurisdiction with the initial filing of a habeas corpus petition against a petitioner's immediate custodian, the subsequent transfer of the petitioner and accompanying change in custody does not divest the court of that jurisdiction." *Gianni v. Fed. Bureau of Prisons*, No. 09-cv-1166 (MJD/JSM), 2010 WL 1427318, at *5 n.6 (D. Minn. Feb. 12, 2010), *adopting report and recommendation*, 2010 WL 1427320 (D. Minn. Apr. 9, 2010), *aff'd*, 405 Fed. App'x 96 (8th Cir. 2010); *accord Griffin v. Ebbert*, 751 F.3d 288, 290 (5th Cir. 2014) ("Jurisdiction attached on that initial filing for habeas corpus relief, and it was not destroyed by the transfer of petitioner and accompanying custodial change." (citing cases)).

1

## I. INTRODUCTION

This matter is before the Court on Petitioner Antoine Clemons's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition"), ECF No. 1. This action has been referred to the undersigned magistrate judge for a report and recommendation to the district court, the Honorable Katherine M. Menendez, United States District Judge for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1. For the reasons stated below, the Court recommends that the Petition be denied and this matter be dismissed.

## II. BACKGROUND

Petitioner is a federal inmate currently being supervised by the BOP's RRM Kansas City field office in Kansas City, Kansas. *Find an inmate.*, Fed. Bureau of Prisons, http://www.bop.gov/inmateloc/; *RRM Kansas City*, Fed. Bureau of Prisons, https://www.bop.gov/locations/ccm/ckc/. Prior to being transferred, Petitioner was confined at the federal prison camp located in Duluth, Minnesota ("FPC-Duluth").[2] He is serving a 151-month term of imprisonment for a drug-related offense. Decl. of Kimberly Murphy ¶ 7; Ex. B to Murphy Decl., ECF No. 7-2 at 2. Petitioner initially had a projected release date in May 2025 via good conduct time release. Murphy Decl. ¶ 7; Ex. B to Murphy Decl., ECF No. 7-2 at 1, 4. The BOP's website reflects an updated projected release date of June 29, 2023. *Find an inmate.*, Fed. Bureau of Prisons, http://www.bop.gov/inmateloc/.

---

[2] *See supra* n.1.

### A. Cell Phone Discovered

On November 5, 2020, at or around 1:20 a.m., a corrections officer observed Petitioner and another inmate "huddled together" on Petitioner's bunk "with something glowing in between them." Ex. D to Murphy Decl., ECF No. 7-4 at 1; *accord* Pet'r's Exs., ECF No. 1-1 at 4. The corrections officer "searched the bunk they were seated on" and discovered a cell phone "connected to a black USB charging cord and plug[-]in adapter next to the mattress." Ex. D to Murphy Decl., ECF No. 7-4 at 1; *accord* Pet'r's Exs., ECF No. 1-1 at 4; *see generally* Ex. D to Murphy Decl., ECF No. 7-4 at 3. In the incident report, the corrections officer noted that the other inmate resided in a different room from Petitioner. Ex. D to Murphy Decl., ECF No.7-4 at 1; *accord* Pet'r's Exs., ECF No. 1-1. Petitioner was provided with a copy of the incident report the same day. Murphy Decl. ¶ 9; *see* Ex. D to Murphy Decl., ECF No. 7-4 at 1.

The incident report classified the incident as a violation of Code 108, which prohibits the

> [p]ossession, manufacture, introduction, or loss of a hazardous tool (tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hacksaw blade, body armor, maps, handmade rope, or other escape paraphernalia, *portable telephone*, pager, or other electronic device).

Ex. A to Murphy Decl., ECF No. 7-1 at 45 (emphasis added); Ex. D to Murphy Decl., ECF No. 7-4 at 1.

### B. Investigation, Initial Hearing & Advisement of Rights

An investigation was conducted, during which Petitioner stated that the cell phone belonged to the other inmate. Ex. D to Murphy Decl., ECF No. 7-4 at 2 ("It was his.").

Petitioner then had an initial hearing before the unit discipline committee. Murphy Decl. ¶ 11; *see* Ex. D to Murphy Decl., ECF No. 7-4 at 1. At this initial hearing, Petitioner had "[n]o comment." Ex. D to Murphy Decl., ECF No. 7-4 at 1. Petitioner was advised that he was being referred to a hearing[3] before the Discipline Hearing Officer ("DHO") and of the rights afforded to him at that hearing, including the right to: (1) "have a written copy of the charge(s) . . . at least 24 hours prior to" the hearing; (2) have a staff representative; (3) "call witnesses (or present written statements of unavailable witnesses) and to present documentary evidence"; (4) "present a statement or remain silent" with the additional advisory that silence could "be used to draw an adverse inference against [him]," but could not alone "be used to support a finding that [he] committed a prohibited act"; (5) "be present throughout the discipline hearing"; (6) "be advised of the DHO's decision, the facts supporting that decision, . . . and the DHO's disposition in writing"; and (7) appeal the DHO's decision. Murphy Decl. ¶ 11; Ex. E to Murphy Decl., ECF No. 7-5 at 1; Ex. F to Murphy Decl., ECF No. 7-6 at 1. Petitioner indicated that he wanted a staff representative present and did not intend to present witnesses. Ex. F to Murphy Decl., ECF No. 7-6 at 1.

---

[3] The Court notes that the date and time of the hearing was listed as "TBD" on the hearing notice. Ex. F to Murphy Decl., ECF No. 7-6 at 1. Petitioner has not, however, claimed that he did not receive sufficient notice of the hearing before the DHO, which occurred approximately one month later. *See, e.g.*, Murphy Decl. ¶ 12; Ex. G to Murphy Decl., ECF No. 7-7 at 1; Pet'r's Exs., ECF No. 1-1 at 1.

### C. DHO Hearing & Decision

The DHO hearing was held. *See generally* Murphy Decl. ¶ 12; Ex. G to Murphy Decl., ECF No. 7-7 at 1-3; Pet'r's Exs., ECF No. 1-1 at 1-3. Petitioner's requested staff representative appeared on his behalf. Ex. F to Murphy Decl., ECF No. 7-6 at 1; Ex. G to Murphy Decl., ECF No. 7-7 at 1; Pet'r's Exs., ECF No. 1-1 at 1. Petitioner waived the right to call any witnesses and did not present any documentary evidence. Ex. G to Murphy Decl., ECF No. 7-7 at 1; Pet'r's Exs., ECF No. 1-1 at 1; *see* Murphy Decl. ¶ 13.

At the hearing, Petitioner denied the disciplinary charge. Ex. G to Murphy Decl., ECF No. 7-7 at 1; Pet'r's Exs., ECF No. 1-1 at 1. Petitioner's staff representative made the following statement on his behalf: "He told me it was the other inmate[']s phone." Ex. G to Murphy Decl., ECF No. 7-7 at 1; Pet'r's Exs., ECF No. 1-1 at 1. Petitioner made the following statement: "It's not my phone, he came into my room with it, and he was using it." Ex. G to Murphy Decl., ECF No. 7-7 at 2; Pet'r's Exs., ECF No. 1-1 at 2. The DHO also considered the incident report, the investigative materials, and the initial hearing before the unit discipline committee. *See* Ex. G to Murphy Decl., ECF No. 7-7 at 2; Pet'r's Exs., ECF No. 1-1 at 2.

"Based on the greater weight of the evidence . . . ," the DHO found that Petitioner committed a violation of Code 108 for possessing a hazardous tool. Ex. G to Murphy Decl., ECF No. 7-7 at 1, 2; Pet'r's Exs., ECF No. 1-1 at 1, 2. The DHO explained:

> In deciding this case, the DHO considered your statement that it wasn't your phone, he came into my room with it, and he was using it. The DHO considered you were huddled together with [another inmate] on your assigned bunk looking at something glowing between you. The DHO considered the

5

> contraband was found on the bunk you were seated on. Therefore the DHO found some evidence to support the charge.

Ex. G to Murphy Decl., ECF No. 7-7 at 2; Pet'r's Exs., ECF No. 1-1 at 2.

Petitioner was sanctioned with a disallowance of 41 days of good conduct time and the loss of both phone and commissary privileges for 120 days. Ex. G to Murphy Decl., ECF No. 7-7 at 2; Pet'r's Exs., ECF No. 1-1.

### D. Administrative Remedies

Petitioner first sought review of the DHO's decision through informal resolution with "the offices of the Federal Bureau of Prison [C]amp Duluth, Minnesota," arguing that the cell phone was not his and belonged to the other inmate. Pet., ECF No. 1 at 2. *See* 28 C.F.R. § 542.13. The DHO's decision was upheld. *See* Pet., ECF No. 1 at 2.

Petitioner next appealed to the Regional Director. *See* 28 C.F.R. § 542.15(a). Petitioner again argued that he was "found guilty when another inmate accepted full responsibility for the cell[] phone" and asserted that he "should not be penalized for the actions of another inmate." Pet'r's Exs., ECF No. 1-1 at 5. This appeal was also denied. Pet'r's Exs., ECF No. 1-1 at 5.

Petition then appealed to the General Counsel. *See* 28 C.F.R. § 542.15(a). Petitioner similarly argued that "another inmate accepted responsibility for the cell phone." Pet'r's Exs., ECF No. 1-1. This appeal was likewise denied.

### III. ANALYSIS

A writ of habeas corpus under 28 U.S.C. § 2241 is the appropriate vehicle for challenging the loss of good time. *See Spencer v. Haynes*, 774 F.3d 467, 469 (8th Cir.

2014). The loss of "good time credits as discipline for violating a prison rule implicates a liberty interest that is protected by the Due Process Clause." *Espinoza v. Peterson*, 283 F.3d 949, 951 (8th Cir. 2002) (citing *Wolff v. McDonnell*, 418 U.S. 539, 555-58 (1974)); *accord Louis v. Dep't of Corr. Servs. of Neb.*, 437 F.3d 697, 700 (8th Cir. 2006).

But, "due process rights are limited in the prison disciplinary context." *Louis*, 437 F.3d at 700.

> In general, when a prison disciplinary hearing may result in the loss of good time credits -
>
> > the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action . . . . [In addition,] the findings of the prison disciplinary board [must be] supported by some evidence in the record.

*Espinoza*, 283 F.3d at 951-52 (alteration in original) (quoting *Superintendent v. Hill*, 472 U.S. 445, 454 (1985)).

As an initial matter, Petitioner received all of the procedural due process requirements owed to him and does not argue otherwise. Petitioner was given advanced written notice of the disciplinary charge. Ex. D to Murphy Decl., ECF No. 7-4 at 1; Pet'r's Exs., ECF No. 1-1 at 4; Ex. F to Murphy Decl., ECF No. 7-6 at 1; *see* Ex. G to Murphy Decl., ECF No. 7-7 at 1; Pet'r's Exs., ECF No. 1-1 at 1. Petitioner was advised in advance of the DHO hearing of the rights he had at the hearing, including but not limited to the right to call witnesses and present documentary evidence. Ex. E to Murphy

7

Decl., ECF No. 7-5 at 1; *see* Ex. G to Murphy Decl., ECF No. 7-7 at 1; Pet'r's Exs., ECF No. 1-1 at 1.  Following the hearing, the DHO prepared a written report, which, among other things, listed the evidence received, described the basis for the DHO's findings, and explained the reasons for the sanctions imposed.  Ex. G to Murphy Decl., ECF No. 7-7 at 1-3; Pet'r's Exs., ECF No. 1-1 at 1-3.

Instead, Petitioner appears to be challenging the weight of the evidence used to find that he committed a violation of Code 108 for possessing a hazardous tool.  Petitioner asserts that the "[t]he 'property'" he was charged with possessing "does not belong to [him] and . . . is not [his]." Pet., ECF No. 1 at 6; *see also* Pet'r's Reply, ECF No. 9 at 2.  Petitioner further asserts that the other inmate "admitted it was [that inmate's] property," "took responsibility for the phone," and "proved [that inmate's] ownership of the phone." Pet., ECF No. 1 at 7; *see also* Pet'r's Reply, ECF No. 9 at 2.  In addition, Petitioner asserts that "[t]he property was found in a common area in a room that does not have any doors" and "[m]ore than 100 inmates and numerous staff members have full and complete access to the space this phone was found [in]." Pet., ECF No. 1 at 7; *see also* Pet'r's Reply, ECF No. 9 at 2.  Petitioner points out that "[t]here are no doors on [his] room" and "[t]he only lockable area in [his] room is [his] locker and this phone was not found there." Pet., ECF No. 1 at 7; *see also* Pet., ECF No. 1 at 8.  According to Petitioner, the BOP should not be permitted "to hold inmates accountable for items discovered or found in common areas" as "[t]his would be mandating inmates to 'police' each other and would put inmates in unwarranted positions to provide information to

8

staff," "create[ing] an unsafe environment for all." Pet., ECF No. 1 at 8; *see also* Pet'r's Reply, ECF No. 9 at 2.

As stated above, due process requires that the findings of the DHO be supported by some evidence in the record. *Hill*, 472 U.S. at 454; *see, e.g.*, *Flowers v. Anderson*, 661 F.3d 977, 980 (8th Cir. 2011); *Louis*, 437 F.3d at 700; *Espinoza*, 283 F.3d 952. "This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced." *Hill*, 472 U.S. at 456 (quotation omitted). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* at 455; *accord Flowers*, 661 F.3d at 980. Rather, it requires the Court to assess only "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56; *accord Flowers*, 661 F.3d at 980. As such, "[t]he judiciary's authority to review the decisions of prison disciplinary authorities is necessarily limited because '[t]he federal courts are not part of the appellate process for prison disciplinary proceedings.'" *Alejandro v. Fikes*, No. 20-cv-2230 (MJD/BRT), 2021 WL 2300656, at *4 (D. Minn. Apr. 19, 2021) (second alteration in original) (quoting *Toombs v. Hicks*, 773 F.2d 995, 997 (8th Cir. 1985)), *report and recommendation adopted*, 2021 WL 2292264 (D. Minn. June 4, 2021). So long as there is "some basis in fact" for the DHO's decision, that decision must stand. *Hill*, 472 U.S. at 456.

The Court appreciates that, from the outset, Petitioner has consistently maintained that the contraband cell phone was not his and belonged to another inmate. But, it is not

for this Court to reweigh the evidence that was before the DHO. The DHO considered Petitioner's response to the disciplinary charge that the cell phone was not his.[4] The DHO also had the incident report, describing how Petitioner and another inmate were observed huddled over a glowing object on Petitioner's assigned bunk and how a search of Petitioner's bunk revealed a cell phone next to his mattress. Considering the contraband cell phone was found in Petitioner's bunk after he had been observed huddling over it, the Court concludes there is sufficient evidence to support the DHO's conclusion that Petitioner possessed the cell phone. Indeed, even accepting that Petitioner's room was more akin to a shared common space, readily accessible by others, it cannot be said that the DHO lacked any evidence or that there was no basis in fact to conclude that Petitioner possessed the contraband cell phone when there was evidence before the DHO tying Petitioner to the cell phone, namely, that Petitioner was observed, on his assigned bunk, in close proximity to the cell phone, huddled over it, and the cell phone was recovered next to his mattress. *Cf. Flowers*, 661 F.3d at 980-81.

Ultimately, in the context of prison disciplinary proceedings, the "Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." *Hill*, 472 U.S. at 457. As there was some evidence from which the DHO's conclusion that Petitioner possessed a hazardous tool, i.e., cell phone, could be deduced, "the Court is to look no further into Petitioner's evidentiary challenges."

---

[4] To the extent Petitioner asserts that it was somewhere documented that the cell phone belonged to the other inmate or that the other inmate was to be held solely responsible for the cell phone, Pet., ECF No. 1 at 2, 7, no such evidence was presented to the DHO. *See* Ex. G to Murphy Decl., ECF No. 7-7 at 1-2; Pet'r's Exs., ECF No. 1-1 at 1-2. Nor is there anything in the record suggesting that the other inmate was present at the DHO hearing. *Compare* Ex. G to Murphy Decl., ECF No. 7-7 at 1-2; Pet'r's Exs., ECF No. 1-1 at 1-2, *with* Pet'r's Reply, ECF No. 9 at 2.

*Hewlett v. Warden*, No. 18-cv-2293 (WMW/LIB), 2019 WL 3557628, at *4 (D. Minn. Apr. 30, 2019), *report and recommendation adopted*, 2019 WL 3553411 (D. Minn. Aug. 5, 2019), *appeal dismissed*, No. 19-3234, 2020 WL 1862383 (8th Cir. Jan. 2, 2020); *see also Hill*, 472 U.S. at 455.

## IV. RECOMMENDATION

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. The Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, ECF No. 1, be **DENIED**.

2. This matter be **DISMISSED**.

Date: May __30__, 2023

        *s/ Tony N. Leung*
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*Clemons v. Birkholz et al.*
Case No. 21-cv-1886 (KMM/TNL)

## NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).